David PASCHALL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0405–CR–439.

Court of Appeals of Indiana.

April 22, 2005.

Transfer Denied June 23, 2005.

Susan D. Rayl, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

David Paschall appeals his conviction after a jury trial of unlawful possession of a firearm by a serious violent felon, a Class B felony.[1] He raises two issues:

1. Whether prosecutorial misconduct placed Paschall in grave peril; and

2. Whether Paschall was properly sentenced.

We affirm.

## FACTS

At 1:15 a.m. on November 7, 2003, Mary Gibson was awakened by a noise. When she looked toward the front door, she saw her screen door on the floor. She went to her porch and saw Paschall by her porch holding a shotgun that was broken into two pieces. She returned to the house and called the police. Gibson told the police officers what had happened and she identified the person with the shotgun as Paschall. A broken Mossberg shotgun was found in a nearby alley. Paschall was apprehended at his house. He told police his mother does not allow guns in the house, so he left the shotgun in an alley.

## DISCUSSION AND DECISION

### 1. *Prosecutorial Misconduct*

■ Paschall asserts various comments the prosecutor made during trial placed him in a position of grave peril. In reviewing prosecutorial misconduct, we first determine whether the prosecutor engaged in misconduct and then consider whether, under all the circumstances, the prosecutor's misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Hancock v. State*, 737 N.E.2d 791, 797 (Ind.Ct. App.2000).

Some examples of the prosecutor's actions follow. Defense counsel tried to impeach Gibson with a sworn statement and noted "It is a sworn statement." The prosecutor responded "allegedly." (Tr. at 63.) When Gibson identified Paschall's brother in the gallery, the prosecutor asked "are we going to mark him as an exhibit?" (*Id.* at 65.) After the defense asked a number of questions about Gibson's statement, the prosecutor referred to "this statement that the defense counsel is so fond of." (*Id.* at 73.) In front of the jury, the prosecutor accused the defense of wasting time. (*Id.* at 95.) The prosecutor, during a defense objection, told defense counsel "you are grandstanding for this jury ... and you are not telling the truth." (*Id.* at 99.)

The judge admonished counsel that he did not want them to get personal. After the admonition, defense counsel objected to the lack of foundation for a State's exhibit. The prosecutor stated: "You know, Your Honor, it is standard practice to offer a State exhibit for identification into evidence, so I would appreciate it if you would admonish this defense counsel not to make these smarmy comments." (*Id.* at 125.) The prosecutor continued to make similarly snide comments throughout the trial.

■ The prosecutor's conduct in this case was inappropriate. As a member of our profession who has presumably read the Oath of Attorneys, he should be aware of the rules of civility and professionalism. If he is not, we urge him to take the time

---

1. Ind.Code § 35–47–4–5.

to reacquaint himself with the Oath and with the Rules of Professional Conduct. The Oath of Attorneys obliges us to abstain from offensive behavior. Ind. Admission and Discipline Rule 22. Telling opposing counsel, in front of a jury, that counsel is not being truthful or is making "smarmy" comments, is offensive behavior. We admonish the prosecutor, as did the trial court, to refrain from such childish and offensive behavior.

In *Stewart v. State,* 474 N.E.2d 1010, 1012 (Ind.1985), the prosecutor made a number of snide remarks that referred negatively to defense counsel's ability and preparedness. As defense counsel was handling exhibits, the prosecutor stated: "The jury can't tell what he's doing up there. He could be playing card tricks for all they know." *Id.* at 1013. The prosecutor also said regarding some exhibits: "[Counsel] just didn't bother to look for them until today." *Id.* Our supreme court found the prosecutor's conduct violated "traditional standards in general, and, specifically, the Disciplinary Rules of the Code of Professional Responsibility which demand fairness and courtesy to opposing counsel." *Id.*

Similarly, in *Marcum v. State,* 725 N.E.2d 852, 858 (Ind.2000), *reh'g denied,* the court found the prosecutor's comments, which belittled and ridiculed defense counsel, inconsistent with the requirement found in the Preamble to the Indiana Professional Conduct Rules that lawyers "demonstrate respect for the legal system and for those who serve it, including ... other lawyers." The court found the remarks improper but determined Marcum was not entitled to relief on his claim of prosecutorial misconduct because he did not establish that the improper comments had a probable persuasive effect on the jury's decision. *Id.* at 859–60.

The court noted "Breaches of civility and attacks on the integrity or competence of counsel ... are ordinarily matters for another forum." *Id.* (*citing Goodner v. State,* 714 N.E.2d 638, 642 (Ind.1999)) ("Members of the bar and the trial bench should remember their obligation to report such misconduct to the appropriate authorities.") *See* Prof. Cond. R. 8.3(a) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct ... shall inform the appropriate professional authority.")

Though the prosecutor's conduct was unprofessional, objectionable, and potentially sanctionable, we cannot say it placed Paschall in grave peril. The prosecutor's misconduct extended the length of the trial and made trial more difficult for opposing counsel, the court, the parties and the jury. However, the State had a strong, if unprofessionally presented, case against Paschall. Gibson recognized Paschall and told police Paschall was the person standing by her porch with a shotgun. A broken shotgun was found in an alley near Gibson's and Paschall's houses. Paschall essentially admitted he had handled the shotgun and left it in an alley because his mother did not allow guns in the house. He was not placed in a position of grave peril by the prosecutor's inappropriate comments.

## 2. Sentencing

█ The trial court enhanced the presumptive ten-year sentence for Paschall's offense by two years. It found two aggravating circumstances: Paschall had a criminal history and he confronted the victim. It found two mitigating factors: Paschall's age and his educational background.

Paschall argues his sentence is improper under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* —— U.S. ——, 125

S.Ct. 21, 159 L.Ed.2d 851 (2004). Prior to *Blakely,* we reviewed sentencing decisions for an abuse of discretion. *See, e.g., Bocko v. State,* 769 N.E.2d 658, 667 (Ind.Ct.App. 2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind.2002). If a trial court used aggravating or mitigating circumstances to modify the presumptive sentence, all we required the trial court to do was: (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *See id.*

However, in *Blakely,* the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 124 S.Ct. at 2536. The Court held "the fact of a prior conviction" is an exception to that rule. *Id.*

Paschall has a criminal history,[2] which includes true findings in juvenile court of criminal conversion in June of 1996, criminal trespass on December 23, 1996, theft on May 5, 1997, and theft on November 18, 1997. This pattern of criminal activity removes this case from *Blakely's* purview. As a result, the trial court did not err in enhancing Paschall's sentence by two years.

Affirmed.

BARNES, J., and DARDEN, J., concur.

---

**2.** One aggravator, confrontation of the victim, runs afoul of *Blakely.* However, a single valid aggravating circumstance may support the imposition of an enhanced sentence. *Haddock v. State,* 800 N.E.2d 242, 245 (Ind.Ct. App.2003).