

**FILED**

Nov 30 2017, 8:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Houdek
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.J., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | November 30, 2017 <br><br> Court of Appeals Case No. <br> 49A05-1704-JV-673 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn Moores, Judge <br><br> The Honorable Gary Chavers, Magistrate <br><br> Trial Court Cause No. <br> 49D09-1701-JD-6 |

**Robb, Judge.**

# Case Summary and Issues

The juvenile court adjudicated D.J. a delinquent child for committing two counts of armed robbery and two counts of criminal confinement, all Level 3 felonies if committed by an adult. D.J. appeals his adjudication, raising two issues for our review: 1) whether his convictions for armed robbery and criminal confinement violate Indiana's constitutional prohibition against double jeopardy; and 2) whether the State presented sufficient evidence to support D.J.'s adjudication as a delinquent child. We conclude there is sufficient evidence to support the juvenile court's true findings D.J. committed armed robbery. We further conclude the juvenile court's true findings of criminal confinement violate the Double Jeopardy Clause of the Indiana Constitution. Accordingly, we affirm D.J.'s adjudication as a delinquent for armed robbery but reverse D.J.'s criminal confinement adjudications and remand to the juvenile court with instructions to vacate the true findings of criminal confinement.

# Facts and Procedural History

On January 1, 2017, twelve-year-old R.R. and his family visited his grandmother at her apartment in Speedway, Indiana. Instead of playing cards with the adults, R.R., his twelve-year-old cousin D.M., and two friends ("Children") played outside for a while. Eventually, the Children resorted to loitering in the stairwell of the apartment building playing games on their cell phones.

[3] As the Children played on their phones in the stairwell, two juveniles, one of whom was later identified as D.J., entered through the front door of the apartment building. A few seconds later, two other juveniles entered through the back door of the apartment building. One of the juveniles who entered through the back door instructed D.J. to check upstairs to see if anyone was around. D.J. followed his orders and informed him there was no one upstairs. That juvenile then told the Children, "I need your money [and] your phones . . . ." Transcript, Volume II at 14. R.R. responded he could not give him the phone because it belonged to his father, at which point the juvenile pulled out a gun and placed it on R.R.'s chest. R.R. complied and gave him the cell phone. He also pointed the gun at D.M.'s head and chest and took his phone. The four juveniles then fled from the apartment building.

[4] The Children immediately ran upstairs to tell their parents what had happened. R.R.'s father went to search for the juveniles and encountered D.J. and the three other juveniles at a gas station a short distance away. When the police arrived, they detained D.J., determined he was unarmed, and released him. Shortly thereafter, R.R. and D.M. arrived and identified D.J., who was then placed under arrest.

[5] The State filed a delinquency petition alleging D.J. committed two counts of armed robbery and two counts of criminal confinement, all Level 3 felonies if committed by an adult. At the fact-finding hearing, D.J. testified and acknowledged he was present during the robbery but denied taking part in it. He testified he was visiting his female cousin who lived in the apartment

complex and had been walking to McDonald's when his cousin's boyfriend asked him to come with him into the stairwell. He further testified he did not know the two juveniles who committed the robbery. The juvenile court found the allegations to be true and adjudicated D.J. a delinquent child. D.J. now appeals.

# Discussion and Decision

## I. Double Jeopardy

[6] D.J. first argues the juvenile court's true findings of armed robbery and criminal confinement violate Indiana's constitutional prohibition against double jeopardy. The State responds alleging double jeopardy does not apply to multiple true findings in delinquency proceedings because there is only a single delinquency adjudication.[1]

[7] The argument offered by the State has been previously addressed by this court in *D.B. v. State*, 842 N.E.2d 399 (Ind. Ct. App. 2006) and *H.M. v. State*, 892 N.E.2d 679, 680 (Ind. Ct. App. 2008), *trans. denied*. In *D.B.*, a juvenile was charged with rape and child molesting for a single act of nonconsensual intercourse and the juvenile court made true findings on both charges. On appeal, this court vacated the juvenile court's true finding of child molesting,

---

[1] The State otherwise concedes that, if double jeopardy applies to delinquency adjudications, the juvenile court's multiple true findings constitute double jeopardy.

holding true findings for both rape and child molesting from a single act of nonconsensual intercourse violated the prohibition against double jeopardy. *D.B.*, 842 N.E.2d at 404.

[8] In *H.M.*, this court again addressed the question posed by the State: whether double jeopardy principles apply to juvenile delinquency proceedings where multiple true findings result in a single delinquency adjudication. *H.M.*, 892 N.E.2d at 680. There, H.M. committed battery upon the victim and attempted to steal her necklace. The juvenile court entered true findings for both battery and attempted theft. H.M. appealed, arguing the multiple true findings violated Indiana's prohibition against double jeopardy.

[9] On appeal, the State argued "there [could] be no double jeopardy violation . . . because 'the double jeopardy prohibition against multiple punishments in the same case do[es] not apply to juvenile delinquency proceedings in which there is only one finding of delinquency and one disposition.'" *Id.* at 681. We disagreed with the State's position and noted that multiple true findings may be used by a trial court to enhance penal consequences in subsequent criminal proceedings. Given the significance of a defendant's criminal history, we held "double jeopardy principles attach where a juvenile faces multiple charges under a single adjudication." *Id.* at 682. Therefore, double jeopardy principles apply to this proceeding and we decline the State's invitation to revisit *D.B.* and *H.M.*

[10] As to D.J.'s argument concerning the juvenile court's true findings for criminal confinement and armed robbery, the State concedes, and we agree, the true findings are in violation of Indiana's constitutional prohibition against double jeopardy. The analysis of double jeopardy claims under the Indiana Constitution is governed by *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), in which our supreme court described two tests, the statutory elements test and the actual evidence test. *Wieland v. State*, 736 N.E.2d 1198, 1204 (Ind. 2000). Two offenses are the "same offense" in violation of Article 1, Section 14 of our constitution if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* (quoting *Richardson*, 717 N.E.2d 32) (emphasis omitted). D.J. confines his argument to the actual evidence test.

[11] Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Vanzandt v. State*, 731 N.E.2d 450, 455 (Ind. Ct. App. 2002), *trans. denied*. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must show a reasonable possibility that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Wieland*, 736 N.E.2d at 1204. In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to

consider the charging information, jury instructions, and arguments of counsel. *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008).

[12] In *Vanzandt v. State*, we determined that the defendant's robbery and criminal confinement convictions violated the prohibition against double jeopardy. The evidence in *Vanzandt* revealed that the defendant, while armed with a gun, ordered the victims to lie on the floor while the defendant took money from a cash register and then fled in one victim's car. 731 N.E.2d at 455. We concluded that compelling the victims to lie on the floor was not separate and apart from the force used to effectuate the robbery. *Id.* Because the defendant demonstrated there was a reasonable possibility that the jury used the same evidentiary facts to establish criminal confinement of the victim as it did the robbery of that same victim, we held that conviction for both violated the Indiana Double Jeopardy Clause and, therefore, vacated the conviction for criminal confinement. *Id.* at 456.

[13] Here, the evidence reveals the Children were playing games on their cell phones in the stairwell. While they were playing, four juveniles, including D.J., entered the apartment building from both entrances. D.J. checked upstairs to see if anyone was around. One of the four juveniles then pulled out a gun and robbed both R.R. and D.M. Following the robbery, the juveniles fled the apartment building. Based on this evidence, we conclude there is a reasonable possibility the juvenile court used the same evidentiary facts to convict D.J. of armed robbery and criminal confinement. *See Polk v. State*, 783 N.E.2d 1253, 1259 (Ind. Ct. App. 2003) (finding that the defendant's robbery and criminal

confinement convictions violated the prohibition against double jeopardy because only one confrontation occurred which resulted in the taking of the victim's property, and the confinement was not greater than that necessary to accomplish the robbery), *trans. denied*.[2]

[14] A reviewing court may remedy a double jeopardy violation "by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Richardson*, 717 N.E.2d at 54 (citation omitted). The reviewing court will make this determination itself, "being mindful of the penal consequences that the trial court found appropriate." *Id.* Because the confinement here was not greater than necessary to effectuate the armed robbery, there is no less serious form to reduce the offenses to. As to which finding should be vacated to remedy the violation, we note the juvenile court committed D.J. to the Indiana Department of Correction. Indiana Code section 31-37-19-9(b) permits the juvenile court to order wardship of a delinquent who has committed armed robbery to the Department of Correction. Therefore, we permit the juvenile court's disposition to stand and reverse D.J.'s two adjudications for criminal confinement.

---

[2] We note R.R. and D.M. both testified there were two other friends with them in the stairwell. The confinement of the other two children could have supported the two true findings of criminal confinement. However, the charging information specifically lists R.R. and D.M. as the victims of both the armed robbery and criminal confinement charges, and R.R. and D.M. were the only victims to testify at the bench trial. *See* Appellant's Appendix at 20-21. Consequently, we accept the State's concession the true findings violate the prohibition against double jeopardy.

# II. Sufficiency of the Evidence

[15] D.J. also argues the State failed to present sufficient evidence that he acted as an accomplice. Our standard of review for sufficiency of the evidence claims is well settled:

> When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.

*Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005) (internal citations and quotation omitted).

[16] D.J. was convicted of armed robbery and criminal confinement pursuant to a theory of accomplice liability. Indiana's accomplice liability statute provides that a "person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. Moreover, in determining whether a person aided another in the commission of a crime, our supreme court has considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003).

[17] Here, the State presented evidence D.J. was present during the commission of the crime with the three other juveniles and that D.J. did not oppose the crime, but willingly participated in it. When ordered to do so, D.J. acted as a scout to check if anyone was around. The other juvenile then pointed a weapon at R.R. and D.M. and stole their phones. The juveniles fled together. The police officer who later detained D.J. found him walking with the three other juveniles a short distance from the scene of the crime. This is sufficient evidence to find D.J. acted as an accomplice. D.J.'s argument that we now credit his testimony that he was apparently deceived into walking with the juveniles or that he was in the wrong place at the wrong time is a request to reassess witness credibility, which we cannot do. *Wright*, 828 N.E.2d at 905-06.

# Conclusion

[18] The State presented sufficient evidence to support the juvenile court's adjudication of D.J. as a delinquent child for committing armed robbery. However, D.J.'s adjudication as a delinquent child for committing criminal confinement violates the state constitutional prohibition against double jeopardy. Accordingly, we affirm the juvenile court's true findings for armed robbery, reverse the juvenile court's true findings for criminal confinement, and remand to the juvenile court to vacate the true findings of criminal confinement.

[19] Affirmed in part, reversed in part, and remanded.

Riley, J., and Pyle, J., concur.