## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Corey L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

O.L.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

November 2, 2015

Court of Appeals Case No.
49A04-1501-JV-42

Appeal from the Marion Superior Court, Juvenile Division

The Honorable Geoffrey Gaither, Magistrate

Trial Court Cause No.
49D09-1405-JD-1289

**Robb, Judge.**

# Case Summary and Issues

[1] The juvenile court adjudicated O.L. a delinquent for committing child molesting and criminal deviate conduct, both Class B felonies if committed by an adult. O.L. appeals his adjudication, raising two issues for review: 1) whether the State presented sufficient evidence to support the juvenile court's true finding of child molesting; and 2) whether the juvenile court erred in admitting double hearsay testimony that was used to establish an element of criminal deviate conduct. We conclude there is sufficient evidence to support the delinquency adjudication for child molesting. As to criminal deviate conduct, we do not examine O.L.'s double hearsay argument because we conclude O.L.'s adjudication for criminal deviate conduct violates the Double Jeopardy Clause of the Indiana Constitution. Accordingly, we affirm O.L.'s adjudication as a delinquent for child molesting but reverse O.L.'s criminal deviate conduct adjudication and remand to the juvenile court with instructions to vacate the true finding of criminal deviate conduct.

# Facts and Procedural History

[2] In May 2014, Gregory Webster and his wife, Michelle Dillow, had several family friends over to their home in Indianapolis, including Angela Lewis and her fifteen-year-old son, O.L. Webster's and Dillow's five year-old daughter, C.W., was in her bedroom with the door closed. Webster and Dillow preferred to keep the doors to their children's rooms open. After noticing that C.W.'s door was closed, Webster entered C.W.'s room. When Webster opened the

door, he observed O.L. with his pants down and his penis in C.W.'s mouth. Webster immediately began hitting O.L. and chased him from the bedroom. Webster followed O.L. from the bedroom, told Dillow what he observed, and told her to call the police. While Webster was chasing O.L. outside the home, Dillow attempted to comfort C.W. and asked her what happened in the bedroom. C.W. told Dillow that O.L. "had put his thing in her mouth and daddy seen it," transcript at 23, and threatened her not to tell anyone.

[3] An officer for the Indianapolis Metropolitan Police Department ("IMPD") located O.L. and transported him to the office of Detective Christopher Lawrence, IMPD's on-call child abuse detective, to be interviewed. O.L. denied the allegations, but stated he had "learned his lesson." *Id*. at 125. Detective Lawrence arrested O.L. and applied for a search warrant to obtain evidence from O.L.'s person and seize his clothing. A forensic examination revealed C.W.'s DNA on the head of O.L.'s penis and on the red boxer shorts seized from O.L.

[4] The State filed a delinquency petition against O.L. alleging he was a delinquent child for having committed the following acts: child molesting and criminal deviate conduct by using force or the imminent threat of force. The juvenile court held a fact-finding hearing at which Webster and Dillow both testified, and the State introduced into evidence the red boxer shorts and penile gland swabs on which C.W.'s DNA was found. O.L. testified and denied the allegations. O.L. offered the testimony of his mother, who stated that Webster fabricated the story because she was going to tell his wife he was cheating on

her. Lewis and O.L.'s father both testified that they had never seen the red boxer shorts before. O.L. also offered the testimony of his brother, J.L., who was playing in the backyard at the time of the incident; J.L. stated he could see into C.W.'s bedroom window from the backyard and O.L. never had his pants down. Finally, O.L. offered testimony from his friend, R.H., who played basketball with O.L. earlier in the day and testified that O.L. was wearing white undergarments. The juvenile court found O.L. to be delinquent for having committed the acts alleged and placed him on probation. O.L. now appeals.

# Discussion and Decision

## I. Standard of Review

[5] A finding that a juvenile has committed a delinquent act must be based upon proof beyond a reasonable doubt. Ind. Code § 31-37-14-1. When a juvenile challenges the sufficiency of that proof, we neither reweigh the evidence nor assess the credibility of the witnesses. *D.H. v. State*, 932 N.E.2d 236, 237-38 (Ind. Ct. App. 2010). We look to the evidence and reasonable inferences supporting the judgment, and if there is evidence of probative value from which a reasonable fact-finder could find the juvenile delinquent beyond a reasonable doubt, we will affirm. *Id*. at 238.

## II. Child Molesting

[6] O.L. was adjudicated a delinquent child for committing child molesting, a Class B felony if committed by an adult. In order for O.L. to be adjudicated a

delinquent child for committing child molesting, the State had to prove that O.L. performed or submitted to deviate sexual conduct with a child under fourteen years of age. Ind. Code § 35-42-4-3(a) (2007). At the fact-finding hearing, in addition to the eyewitness testimony of Webster, the State introduced into evidence the red boxer shorts and penile gland swabs taken from O.L., both of which contained C.W.'s DNA.

[7] O.L. argues the evidence is insufficient to support his adjudication because the testimony of "multiple witnesses, including Webster's wife, . . . cast serious doubt on Mr. Webster's version of events." Brief of Appellant/Defendant at 7. Specifically, he points to his mother's testimony that Webster fabricated his version of events in response to her intention to tell Dillow that Webster was cheating on her, his brother's testimony that O.L. never had his pants down in C.W.'s room, and his friend's testimony that O.L. was wearing white undergarments earlier in the day. The conflict between Webster's and Dillow's testimony and that of O.L.'s mother, father, brother, and friend is a matter of the credibility of those witnesses for the fact-finder to sort out. "[I]t is precisely within the domain of the trier of fact to sift through conflicting accounts of events. Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe." *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009) (alteration in original) (quoting *In re J.L.T.*, 712 N.E.2d 7, 11 (Ind. Ct. App. 1999)), *trans. denied*. Furthermore, this testimony does not, as O.L. argues, refute or "cast serious doubt" on the fact that C.W.'s DNA was discovered on the head of O.L.'s penis and on his red boxer shorts.

[8] Based on our review of the evidence most favorable to the adjudication, we conclude that sufficient evidence exists to support the juvenile court's finding that O.L. committed child molesting. C.W. was five years-old at the time of the incident, Webster testified he witnessed O.L.'s penis in C.W.'s mouth, and a forensic examination uncovered C.W.'s DNA on O.L.'s penis and red boxer shorts. The State presented sufficient evidence to prove the act of child molesting.

## III. Criminal Deviate Conduct

[9] The second issue presented by O.L. is whether the juvenile court erred in admitting "double hearsay" testimony. O.L. was adjudicated a delinquent child for knowingly or intentionally causing another person to perform or submit to deviate sexual conduct when the other person is compelled by force or the imminent threat of force. Ind. Code § 35-42-4-2(a)(1) (1998). At the fact-finding hearing, Detective Lawrence testified over O.L.'s objection that "Michelle [Dillow] said [C.W.] told her that [O.L.] had pulled his pants down and told her to put his private in her mouth. She also said that [O.L.] told her that if she told, he would beat here [sic]." Tr. at 132. O.L. contends his criminal deviate conduct adjudication requires a showing of force or threat of force, and the only evidence produced by the State proving that element is the double hearsay statement made by Detective Lawrence.

[10] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls under a specific hearsay exception.

Ind. Evidence Rule 801; *see also Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). If the statement involves hearsay within hearsay, also known as double hearsay, the statement may be admitted only if "each part of the combined statements conforms with an exception to the rule." Evid. R. 805; *see also Mayberry v. State*, 670 N.E.2d 1262, 1267 (Ind. 1996) ("[E]ach level of hearsay must qualify under an exception to the hearsay rule."). However, we need not examine each level of Detective Lawrence's statement to determine if its admission was error because the State concedes, and we agree, that O.L.'s adjudication for criminal deviate conduct must be reversed because it violates the Double Jeopardy Clause of the Indiana Constitution.

[11] Article 1, Section 14 of the Indiana Constitution provides in part, "No person shall be put in jeopardy twice for the same offense." In analyzing this principle, our supreme court has explained:

> [T]wo or more offenses are the "same offense" in violation of Article [1], Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original). Thus, a double jeopardy violation exists if there is a reasonable probability that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *D.B. v. State*, 842 N.E.2d 399, 404 (Ind. Ct. App. 2006).

In the petition filed in the juvenile court, the State alleged O.L. was a delinquent child for committing child molesting, a Class B felony if committed by an adult:

> On or about the 22nd day of May, 2014, said child did perform or submit to deviate sexual conduct, by placing his penis in the mouth of [C.W.], a child who was then under the age of fourteen (14) years, that is: 5 (five) years.

Appellant's Appendix at 17. The petition also alleged O.L. was a delinquent child for committing criminal deviate conduct, a Class B felony if committed by an adult:

> On or about the 22nd day of May, 2014, said child did knowingly or intentionally cause [C.W.] to perform or submit to deviate sexual conduct by placing his penis in the mouth of [C.W.] and said [C.W.] was compelled to perform or submit to said conduct by force or threat of force.

*Id*.

Here, O.L.'s act of placing his penis in C.W.'s mouth was an essential element of both criminal deviate conduct and child molesting. Furthermore, Webster only testified to witnessing a single instance of this act, and the State's closing argument addressed only one incident in support of the two allegations. Thus, there is a "reasonable probability" the juvenile court used the same facts to establish the essential elements of both child molesting and criminal deviate conduct. *See D.B.*, 842 N.E.2d at 404 (holding there was a reasonable possibility the juvenile court used testimony of only one instance of

nonconsensual sexual intercourse to establish the essential elements of both rape and child molesting).

[14] A reviewing court may remedy a double jeopardy violation "by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Richardson*, 717 N.E.2d at 54 (citation omitted). The reviewing court will make this determination itself, "being mindful of the penal consequences that the trial court found appropriate." *Id.* Neither child molesting nor criminal deviate conduct can be reduced to a less serious offense than a Class B felony. As to which finding should be vacated to remedy the violation, we note the juvenile court ordered O.L. be placed on probation, rather than committing him to the Department of Correction, which it could have done upon a proper finding that O.L. had committed criminal deviate conduct. *See* Ind. Code § 31-37-19-9; *see also D.B.*, 842 N.E.2d at 404 (determining that because the juvenile court committed the juvenile to DOC upon true findings of rape and child molesting, vacating the true finding of child molesting would allow the juvenile court's disposition to stand).[1] Further, the State agrees the criminal deviate conduct

---

[1] In determining how to remedy the violation, we are also mindful of the evidentiary issue O.L. raised with respect to the criminal deviate conduct adjudication.

finding should be vacated. Therefore, to remedy the double jeopardy violation, we reverse O.L's adjudication for criminal deviate conduct.

# Conclusion

The State presented sufficient evidence to support the juvenile court's adjudication of O.L. as a delinquent child for committing child molesting. However, O.L.'s adjudication as a delinquent child for criminal deviate conduct violates the state constitutional prohibition against double jeopardy. Accordingly, we affirm O.L.'s adjudication for child molesting, reverse his adjudication for criminal deviate conduct, and remand to the juvenile court with instructions to vacate the true finding of criminal deviate conduct.

Affirmed in part, reversed and remanded in part.

Vaidik, C.J., and Pyle, J., concur.